## 40490. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY v. BINNS.

HILL, Chief Justice.

We granted certiorari in this case on the following questions: "(1) Whether MARTA, in its capacity as a self-insurer under our no-fault insurance law, is liable for punitive damages under OCGA § 33-34-6 (Code Ann. § 56-3406b) for a bad faith refusal to pay no-fault benefits? (2) Whether § 22 of the MARTA Act (Ga. L. 1965, pp. 2243, 2275) renders MARTA liable for punitive damages in tort? See *Columbus v. Myszka,* 246 Ga. 571. (3) If question#1 is answered in the affirmative, should question#2 be reached?"

The case arises out of a no-fault insurance claim against the Metropolitan Atlanta Rapid Transit Authority by a pedestrian injured 8 years ago, in 1976, by a MARTA bus. He has yet to receive even the $220.35 emergency room fee incurred when he was sent there by an ambulance called by a MARTA supervisor. The case was tried by a jury, which awarded the plaintiff $2,945.83 in compensatory damages and $100,000 in punitive damages under OCGA § 33-34-6 (Code Ann. § 56-3406b), supra, for failure to pay no-fault benefits within 60 days. The trial court granted MARTA judgment n.o.v. as to the punitive damages, and the Court of Appeals reversed.[1] *Binns v. MARTA,* 168 Ga. App. 261 (308 SE2d 674) (1983). We granted certiorari.

---

[1] Before deciding the present case, the Court of Appeals certified a question to us concerning the correct standard for reviewing whether the evidence supported an award of punitive damages, which we answered in *Binns v. MARTA,* 250 Ga. 847, 848 (301 SE2d 877) (1983).

As pointed out by the Court of Appeals, the punitive damages in this case were imposed against MARTA not as a tortfeasor but in its capacity as a self-insurer under the no-fault law. *Binns v. MARTA,* supra, at p. 262. Nevertheless, we find certain provisions of the MARTA Act, Ga. L. 1965, p. 2243, relative to MARTA's tort liability pertinent to its status as a self-insurer. After providing that MARTA shall exist for the purposes of planning, acquiring, constructing, administering, etc., a rapid transit system (Section 7), the Act provides that (Section 8) "The Authority shall have all powers necessary or convenient to accomplish the aforesaid purposes including, by way of illustration and not specification, the following: (a) The powers, privileges and immunities authorized by law for private corporations and for instrumentalities of government. The Authority may sue or be sued in its corporate name. . . ."

Section 22 of the MARTA Act, as amended by Ga. L. 1971, pp. 2092, 2101, provides: "The Authority shall *not enjoy governmental immunity from tort liability,* but shall be liable therefor *as any private corporation* except that no execution shall be levied on any property of the Authority prior to ninety (90) days from the date of a final judgment against the Authority. *The Authority shall provide for adequate insurance,* similar protection against any loss, *liability or other risk,* hazard or responsibility to which it may be exposed or which it may accept on account of its property, personnel or operations. *Such insurance may be provided through self-insurance reserves* or by contracts or arrangements with other parties in such manner and amounts as the Board in its discretion shall determine or through any combination of same." (Emphasis supplied.) The last sentence was added by the 1971 amendment so that MARTA would not be required to contract for insurance but could be a self-insurer.

Pursuant to its amended authority, MARTA applied for and was granted a no-fault self-insurance certificate by the Department of Public Safety on March 24, 1975, which was in effect at the time of the accident in 1976, during the ensuing litigation, and up to at least January 1, 1983. In its application, MARTA agreed to "provide reparations on the terms and conditions of Sections 3, 5(d), 6, 7, 9 and 10 of the Georgia Motor Vehicle Accident Reparations Act (Ga. L. 1974, p. 113 et seq.) for all accidents occurring during the period that applicant continues to hold the status of self-insurer with the Department of Public Safety."

Section 6(c) of the no-fault act, OCGA § 33-34-6 (c) (Code Ann. § 56-3406b), here in issue, was added by Ga. L. 1975, pp. 1202, 1208, effective April 24, 1975. It provides: ". . . in the event that an insurer fails or refuses to pay a person the benefits which the person is

entitled to under this chapter within 60 days after proper proof of loss has been filed, the person may bring an action to recover the benefits; and, if the insurer fails to prove that its failure or refusal to pay the benefits was in good faith, the insurer shall be subject to punitive damages." MARTA now seeks to avoid this punitive damage provision on the ground that punitive damages should not be allowed against a governmental entity.

It is clear that in enacting Section 22 of the MARTA act, quoted above, the General Assembly intended to subject MARTA to tort liability and to require MARTA to obtain the necessary insurance to cover any potential liability or other claims against it ("The Authority *shall not* enjoy governmental immunity from tort liability .... The Authority *shall contract* for adequate insurance...."). When it was authorized by the 1971 amendment of the MARTA Act to act as self-insurer, MARTA was not authorized to thereby limit its liability. Further, our no-fault act, OCGA § 33-34-3 (a) (1) (Code Ann. § 56-3405b), provides that "[a]ll policies of motor vehicle liability insurance issued in this state must be in accordance with the requirements of this chapter ...." Under OCGA § 33-34-2 (12) (Code Ann. § 56-3402b) a "self-insurer" means "any owner who has on file with the Commissioner of Public Safety an approved plan of self-insurance which provides for coverages, benefits, and efficient claims handling procedures substantially equivalent to those afforded by a policy of automobile liability insurance that complies with all of the requirements of this chapter."

MARTA has on file a self-insurance certificate and has represented to the Department of Public Safety that it is a self-insurer subject to the provisions of the no-fault act. There is no merit to MARTA's contention that it agreed only to comply with the no-fault act as enacted in 1974 without any amendments. (MARTA relies on the fact that its certificate was approved and has remained unchanged since March 24, 1975, one month before the effective date of OCGA § 33-34-6 (c) (Code Ann. § 56-3406b), supra, providing for punitive damages.) The application for the self-insurer's certificate itself makes clear that its approval is conditioned upon the filing of a current financial statement each fiscal year. It can fairly be said that as a self-insurer MARTA has agreed to comply with the applicable law as amended, be those amendments in its favor or not.

MARTA had the authority to contract for no-fault insurance, and if it had its insurer would be subject to the penalty provision of OCGA § 33-34-6 (c) (Code Ann. § 56-3406b). MARTA chose to be a self-insurer and its obligations as such should not be reduced by virtue of its choice. Thus, we conclude that MARTA as a self-insurer is liable for punitive damages for failing to pay a claim within 60 days

of the filing of proof of loss under OCGA § 33-34-6 (c) (Code Ann. § 56-3406b). In view of the foregoing, we do not find it necessary to answer the second certiorari question. The judgment of the Court of Appeals is affirmed for the reasons stated in this opinion.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 14, 1984.

*Kutak, Rock & Huie, W. Stell Huie, Lawrence L. Thompson, Paul A. Howell, Jr.,* for appellant.

*Thomas Henry Nickerson,* for appellee.

*Winburn, Lewis & Barrow, Gene Mac Winburn, John E. James,* amicus curiae.